VIOLET STRAUB, Plaintiff-Appellant, v. THE CITY OF MT. OLIVE *et al.*, Defendants-Appellees (Brian Robeza, Indiv., Defendant).

Fourth District   No. 4—92—0622

Opinion filed January 28, 1993.

Peter C. Drummond, of Staunton, for appellant.

James C. Cook and John E. Sabo, both of Walker & Williams, P.C., of Belleville, for appellees City of Mt. Olive and William Vogt.

Robert E. Gillespie and John E. Nolan, both of Hinshaw & Culbertson, of Springfield, for appellees Lutheran Brotherhood and Jim Brinkman.

Andy Scharf and Ron Scharf, both of Litchfield, for appellees Betty Neilson and Eleanore Miller.

JUSTICE KNECHT delivered the opinion of the court:

Plaintiff Violet Straub appeals from the Macoupin County circuit court's dismissal of her fourth-amended complaint which alleged, based on a theory of negligence, the following defendants were liable for injuries she sustained: the City of Mt. Olive (City); William Vogt, Mt. Olive park board president; the Lutheran Brotherhood and its agent Jim Brinkman; and Betty Neilson and Eleanore Miller, members of the Mother Jones Jubilee Committee (Jubilee Committee). Her complaint also included counts based on willful and wanton misconduct against the City, Vogt, Brinkman, the Lutheran Brotherhood, a *respondeat superior* claim against the City for Vogt's alleged willful

and wanton misconduct, and against the Lutheran Brotherhood for Brinkman's alleged willful and wanton misconduct.

The trial judge concluded defendants were immune from liability for the negligence claims based on section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—106). He also dismissed the counts based on defendants' willful and wanton misconduct, concluding plaintiff failed to and would be unable to allege facts to support these claims. Plaintiff argues the trial judge's dismissal of her claims was error. We affirm the trial judge's dismissal of claims against each defendant except the count against the City based on willful and wanton misconduct.

## I. FACTS

### A. *Plaintiff's Complaint*

Plaintiff alleges she was injured in Mt. Olive Park in June 1990 when she tripped over a wire used to straighten and support a young tree in the park. When the injury occurred, a Mother Jones Jubilee Celebration (Jubilee Celebration) was taking place in the City. The celebration was organized by the City and Betty Neilson and Eleanore Miller, Jubilee Committee members.

Before the celebration, the Lutheran Brotherhood, through its agent, defendant Jim Brinkman, and the City, through William Vogt, the park board president, planted trees in the Mt. Olive City Park and secured them by extending unmarked baling wire from the trees to stakes buried in the ground.

The City was allegedly liable for plaintiff's injury because it owned and operated the park and invited members of the public generally, including plaintiff, to visit the Jubilee Celebration. The celebration was sponsored by the Jubilee Committee, consisting of defendants Neilson and Miller. The Lutheran Brotherhood, through Brinkman, donated the trees and baling wire and planted the trees with Vogt's assistance. Defendant Brian Robeza, who is not part of this appeal, was allegedly an independent contractor hired by the City to cut and maintain the grass at the park. Robeza allegedly cut the park grass in a manner that concealed the guide wires and stakes from members of the general public.

### 1. Negligence Allegations

Plaintiff's basis for her negligence claims included the following factors: (1) defendants installed guide wires which were not visible to

the general public exercising ordinary care; (2) although the wires were below eye level, defendants failed to mark them to make them reasonably safe; (3) defendants failed to warn visiting senior citizens, whom they knew would be frequenting the area, by marking the guide wires or erecting a barricade; and (4) because defendants used rusted wire or wire which was prone to rust, the wire was less visible to a person using ordinary care and defendants failed to provide a reasonably safe environment free from hazards pursuant to section 3—102 of the Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—102). Plaintiff's counts included the allegation defendants affirmatively created a condition that they knew about before her injury occurred and which was not reasonably safe. She also alleged defendants actively promoted the public's attendance to the park activities, exposing numerous people to the hazard.

### 2. Willful and Wanton Misconduct Allegations

Plaintiff alleged willful and wanton misconduct on the part of the City occurred because: (1) the City showed a conscious disregard or utter indifference for the safety of others and it knew a danger existed in the Mt. Olive City Park before the general public was invited to the festivities and the City failed to abate the danger; (2) individuals had brought a dangerous situation to the defendant's attention and the City did not abate it; (3) other individuals had tripped or fallen on the wires and although defendants knew of such occurrences, defendants did nothing to remedy the problem; (4) defendants knew the wires were difficult to see, rusted, and posed a particular hazard to elderly individuals, but did nothing to remedy the hazard; (5) defendants planted and failed to properly secure or mark the trees despite their knowledge the wires posed a danger to the public; (6) defendants failed to properly plant, supervise or mark the trees despite knowing the trees presented a danger to the public; and (7) defendants knew or should have known the trees presented a danger to the public.

Plaintiff's second count against the City for alleged willful and wanton misconduct was based on Brinkman's actions under a theory of *respondeat superior*. Her counts based on willful and wanton misconduct against Brinkman and against Vogt included the following allegations: (1) defendants chose wire which they knew posed a danger to the public; (2) defendants attached the wire to the trees in a way which posed a danger to the public; (3) defendants knew the Jubilee Celebration would attract the public, including elderly people; (4) defendants knowingly and intentionally selected wire which could

rust, making it less visible to normal people; (5) defendants buried the stakes attached to the wires so the stakes were not visible, knowing this would pose a hazard to the public; (6) knowing the lawn mowing would be subcontracted and that debris would likely be placed around the bases of the trees, defendants willfully and wantonly failed to supervise the mowing and trimming of the trees so their location would not be obscured; (7) knowing the park would be used for the Jubilee Celebration, defendants committed willful and wanton misconduct and showed an utter disregard and total indifference to the safety of others by failing to mark the wires although they knew the wires were below eye level; (8) defendants chose baling wire which was rusted when it was attached to the trees which was hard to see and posed a danger to pedestrians; and (9) defendants did not return to mark the trees, although they knew there was a danger of tripping.

Plaintiff's claim of willful and wanton misconduct against the Lutheran Brotherhood was based on Brinkman's actions under a theory of *respondeat superior*.

## B. *The Dismissal*

The trial judge relied on statutory immunity from negligence claims provided to defendant, the City, pursuant to section 3—106 of the Act, and provided to the additional defendants derivatively. He also concluded plaintiff failed to, and would be unable to, allege facts which as a matter of law would support the counts against defendants based on willful and wanton misconduct. Defendants' motions to dismiss pursuant to section 2—615 of the Civil Practice Law were granted. Ill. Rev. Stat. 1989, ch. 110, par. 2—615.

## II. ANALYSIS

Section 3—106 of the Act states:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." Ill. Rev. Stat. 1989, ch. 85, par. 3—106.

Section 1—207 of the Act defines "public employee" as "an employee of a local public entity." (Ill. Rev. Stat. 1989, ch. 85, par. 1—207.) "Local public entity" is defined by section 1—206 of the Act to include a municipality, municipal corporation, park district, and all

other local governmental bodies. (Ill. Rev. Stat. 1989, ch. 85, par. 1—206.) Section 1—202 of the Act further defines "employee" as "a present or former officer, member of a board, commission or committee, agent, volunteer, servant or employee, whether or not compensated, but does not include an independent contractor." Ill. Rev. Stat. 1989, ch. 85, par. 1—202.

Vogt, as a member of the City's park board, qualifies as an employee protected by the Act. Brinkman, who was acting as a volunteer for the City when he planted the trees, also is protected by the Act because he was acting as a volunteer on behalf of the City. Neilson and Miller qualify for immunity from a negligence cause of action because they too were acting as volunteers on behalf of the City. Plaintiff does not contest the court's rulings related to the codefendants' relationships to the City. The issues involve whether their actions, as representatives of the City, are immune from liability pursuant to section 3—106 of the Act.

A section 2—615 motion attacks the legal sufficiency on the face of plaintiff's complaint. (*Urbaitis v. Commonwealth Edison* (1991), 143 Ill. 2d 458, 475, 575 N.E.2d 548, 555.) When ruling on such a motion, the court must accept as true all well-pleaded facts and all reasonable inferences which can be drawn from the complaint. (See *McGrath v. Fahey* (1988), 126 Ill. 2d 78, 90, 533 N.E.2d 806, 811.) A motion to dismiss for failure to state a cause of action raises whether sufficient facts are contained in the pleadings which, if established, could entitle the plaintiff to relief. (*Urbaitis*, 143 Ill. 2d at 475, 575 N.E.2d at 555.) In evaluating this question the court must interpret the allegations in the complaint in the light most favorable to the plaintiff. *McGrath*, 126 Ill. 2d at 90, 533 N.E.2d at 811.

### A. *Negligence-Based Claims*

Plaintiff argues the wire support which caused her injury was not merely an *existence of a condition* within the city park, thereby immunizing defendants from prosecution pursuant to section 3—106 of the Act. Rather, she contends because the City's liability was brought about not by a passive condition in the park, but by an affirmative act by its agent and the other defendants, section 3—103 of the Act controls and defendants are not immune from prosecution because they *created a condition* which was not reasonably safe. Ill. Rev. Stat. 1989, ch. 85, par. 3—103.

Plaintiff also argues section 3—106 of the Act does not control because when her injury occurred the park was being used for a joint commercial enterprise between the City and the Jubilee Committee

and not for "recreational purposes." Ill. Rev. Stat. 1989, ch. 85, par. 3—106.

### 1. Relevant Statutory Provision

■■ Section 3—106 of the Act is not intended to immunize defendants from liability only when their negligence arises from their failure to act. The purpose of this provision is to encourage development and maintenance of parks, playgrounds and similar areas. (*Beckus v. Chicago Board of Education* (1979), 78 Ill. App. 3d 558, 560, 397 N.E.2d 175, 177; see *Maloney v. Elmhurst Park District* (1970), 47 Ill. 2d 367, 370, 265 N.E.2d 654, 655-56.) Plaintiff's argument section 3—106 applies only to inaction by officials which causes decay leading to dangerous conditions is inconsistent with this purpose. Development and maintenance of parks do not occur through inaction.

When interpreting a statute, a court will provide words their plain and commonly accepted meanings unless doing so defeats the legislature's intent. (*Illinois Telephone Association v. Illinois Commerce Comm'n* (1977), 67 Ill. 2d 15, 20, 364 N.E.2d 63, 64; *Bonfield v. Jordan* (1990), 202 Ill. App. 3d 638, 644, 560 N.E.2d 412, 416.) Section 3—106 provides public employees are liable for injuries based on the existence of a *condition* in a park if the employee is guilty of willful and wanton *conduct* which proximately causes the injury.

Plaintiff relies on the following definition of "condition" to establish the term does not include the defendants' affirmative acts of supporting the trees with rusted wire and of not warning the public the wires were present: "Mode or state of existence, (a bicycle in good condition, butter in a liquid condition); *** state of training." This definition does not evidence a meaning contrary to active conduct.

"Conduct" is defined by Black's Law Dictionary as:

> "Personal behavior; deportment; mode of action; any positive or negative act.
>
> An action or omission and its accompanying state of mind, or, where relevant, a series of acts and omissions." (Black's Law Dictionary 268 (5th ed. 1979).)

When an injury results from a *condition* in a park or other property intended or permitted to be used for recreational purposes, local public entities and their employees are immune from liability based on a theory of negligence.

The first and second districts have applied section 3—106 of the Act in cases where affirmative acts were involved. In *Kirnbauer v. Cook County Forest Preserve District* (1991), 215 Ill. App. 3d 1013, 1022-23, 576 N.E.2d 168, 175, the first district concluded summary

judgment in defendant's favor was proper. In affirming, the court rejected an argument that the site was not intended for recreational purposes within the meaning of section 3—106. There the plaintiff was allegedly injured by a suspended steel cable erected by the forest preserve.

In *Ramos v. Waukegan Community Unit School District No. 60* (1989), 188 Ill. App. 3d 1031, 1032, 1036, 544 N.E.2d 1302, 1302, 1305, the second district concluded defendant was immune from liability pursuant to section 3—106. Plaintiff had alleged, in part, that the minor child was injured when she tripped on a sidewalk constructed by defendant which was cracked, uneven and in an unreasonably dangerous condition.

We reject plaintiff's contention section 3—106 of the Act did not control because defendants' negligence occurred by their action rather than inaction. Nor, as plaintiff contends, does section 3—103 of the Act control. This section provides:

"A local public entity is not liable under this Article for an injury caused by the adoption of a plan or design of a construction of, or an improvement to public property where the plan or design has been approved in advance of the construction or improvement by the legislative body of such entity or by some other body or employee exercising discretionary authority to give such approval or where such plan or design is prepared in conformity with standards previously so approved. The local public entity is liable, however, if after the execution of such plan or design it appears from its use that it has created a condition that it is not reasonably safe." Ill. Rev. Stat. 1989, ch. 85, par. 3—103(a).

When construing a statute each section should be considered in relation to all other provisions of the statute to ascertain the legislature's intent. *In re Petition to Annex Certain Territory* (1991), 144 Ill. 2d 353, 362, 579 N.E.2d 880, 884; *Chastek v. Anderson* (1981), 83 Ill. 2d 502, 511, 416 N.E.2d 247, 251; *Totten v. State Board of Elections* (1980), 79 Ill. 2d 288, 292, 403 N.E.2d 225, 227.

Section 3—102 of the Act delineates governmental duties regarding property maintenance, et cetera, "[e]xcept as otherwise provided in this Article." (Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a).) Section 3—103 does not control in this instance. (Ill. Rev. Stat. 1989, ch. 85, par. 3—103.) Section 3—106 delineates when a remedy is available when a person is injured in a public park or other area used for recreational purposes.

### 2. Characterization of Event

Plaintiff argues as an additional reason section 3—106 does not control to immunize defendants that during the Jubilee Celebration the park was not merely being used for recreational purposes, but was a joint commercial venture between the City and the Jubilee Committee. She relies on *John v. City of Macomb* (1992), 232 Ill. App. 3d 877, 880, 596 N.E.2d 1254, 1256, wherein the plaintiff was injured on a courthouse lawn during a festival. The third district reversed the circuit court's entry of summary judgment in favor of the city because it concluded the evidence was insufficient to establish plaintiff fell in an area "intended or permitted to be used for recreational purposes" so as to grant the city immunity pursuant to section 3—106. Ill. Rev. Stat. 1989, ch. 85, par. 3—106.

■ *John* is distinct from plaintiff's case. Plaintiff's injuries occurred in a public park, which is "[a]n inclosed pleasure-ground *** set apart for the recreation of the public." (Black's Law Dictionary 1005 (5th ed. 1979).) Moreover, section 3—106 of the Act lists parks as a recreational area. The Jubilee Celebration was organized to honor Mother Jones. Plaintiff does not provide additional facts related to how the City and the Jubilee Committee intended to profit from the event. However, the mere fact the Jubilee Celebration, organized as a recreational event, would also generate revenue does not remove the matter of liability for plaintiff's injury from the ambit of section 3—106.

Section 3—106 of the Act limits the circumstances under which an entity and its volunteers and agents may be deemed liable for injuries incurred in a public park. The trial judge properly dismissed plaintiff's claims against defendants based on a theory of negligence. For defendants to have been liable plaintiff had to show their actions constituted willful and wanton misconduct.

### B. *Willful and Wanton Conduct*

Section 3—106 of the Act applies to situations where a municipality fails to maintain property under its control intended for recreational use by allowing an unsafe condition to exist. Unlike section 3—102 of the Act, however, it contemplates liability only if the governmental unit or employee acts in a willful and wanton manner. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 507, 565 N.E.2d 654, 658.) Willful and wanton conduct is "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious

disregard for the safety of others or their property." Ill. Rev. Stat. 1989, ch. 85, par. 1—210.

■ The plaintiff must show that after knowledge of impending danger, defendant failed to exercise ordinary care to prevent it or failed to discover the danger through recklessness or carelessness when it should have been discovered. *Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 429, 412 N.E.2d 447, 457.

Although plaintiff's brief combines her arguments on the sufficiency of her allegations against all defendants, we discuss her count against the City separate from the discussion of her pleadings against Vogt, Lutheran Brotherhood, and Brinkman because the allegations vary.

### 1. Claims against the City

The City claims plaintiff's pleadings did not sufficiently state facts to allow her complaint to proceed. Plaintiff directs us to the second district ruling in *Benhart v. Rockford Park District* (1991), 218 Ill. App. 3d 554, 559-60, 578 N.E.2d 600, 604, that the trial judge erred by granting summary judgment in favor of defendant where plaintiff alleged willful and wanton misconduct by defendant for removing non-slip strips previously present in the pool. She contends the trial judge erred by dismissing the willful and wanton misconduct counts against defendants because her pleadings were far more specific than those provided in *Benhart*.

Plaintiff alleged defendants knew or should have known stringing the wire to invisible stakes below eye level would present a hazard. She also contends she alleged defendants knew or should have known a large number of the people who would visit the park would be elderly people and that defendants had been told of the dangerous nature of the wire by individuals before she was injured and that other individuals had been injured or brought the matter to the defendants' attention.

Plaintiff mischaracterizes her pleadings. Only her count against the City for willful and wanton misconduct alleges other individuals had informed the City of the dangerous condition and informed the City other individuals had tripped over the wire. Similar allegations are not contained in her count against the City based on *respondeat superior* over Vogt, her count against the Lutheran Brotherhood based on *respondeat superior* over Brinkman or her individual counts against Brinkman and Vogt.

The City argues plaintiff's willful and wanton claim against it alleges only it should have known the use of baling wire attached to stakes driven in the ground to support young growing trees presented a hazard which plaintiff could not apprehend as she walked through the park. It contends these allegations do not sufficiently set out the facts to support a willful and wanton misconduct claim.

The City also directs us to our observation in *Harvey v. Norfolk & Western Ry. Co.* (1979), 73 Ill. App. 3d 74, 82, 390 N.E.2d 1384, 1389, that plaintiff must include facts to support a conclusion defendant knew of other injuries or accidents or had prior knowledge of impending danger. It argues plaintiff's count against it failed to establish this essential fact. This contention ignores the allegations in plaintiff's complaint that (1) individuals had brought the dangerous condition to the attention of the City and the City did not abate it; and (2) other individuals had tripped or fallen on the wires and although the City knew about these occurrences it did nothing to remedy the problem.

The City correctly notes this court has stated "conclusions unsupported by statements of the specific facts on which they rest are irrelevant." (*Dunn v. Baltimore & Ohio R.R. Co.* (1987), 162 Ill. App. 3d 97, 108, 515 N.E.2d 1027, 1035.) This court also indicated for a count to withstand a motion to dismiss it need include only one sufficient allegation supporting a cause of action. Other allegations which do not support the cause of action are mere surplusage but do not in themselves provide a reason to dismiss the pleading. *Dunn*, 162 Ill. App. 3d at 108-09, 515 N.E.2d at 1035.

Several of the cases relied on by the City support our conclusion that plaintiff's allegations that (1) the City knew of the danger associated with the support wire and (2) it knew other individuals had tripped or fallen over the wire sufficiently set forth a claim based on willful and wanton misconduct. Although the City relies on them to argue conclusory statements are insufficient to permit a pleading to proceed, the City's knowledge of the danger and that individuals previously came in contact with the wire are not mere conclusions. A discussion of some of the cases cited by the City will illustrate the sufficiency of these allegations to proceed with plaintiff's willful and wanton misconduct claim against the City.

In *Washington v. Chicago Board of Education* (1990), 204 Ill. App. 3d 1091, 1094, 562 N.E.2d 541, 543, the first district affirmed dismissal of the claim of plaintiff, a minor, based on willful and wanton misconduct which allegedly caused injuries she sustained when she slipped on an icy school stairway. Plaintiff's allegations the school's acts were done willfully and wantonly, the stairs were unreasonably

dangerous, and the school board knew or should have known about the dangerous condition were conclusions. Plaintiff provided no facts to support these allegations.

Similarly, as noted by the City, in *Brown v. Chicago Park District* (1991), 220 Ill. App. 3d 940, 941-42, 581 N.E.2d 355, 357, the first district affirmed dismissal of the plaintiff's complaint where plaintiff, a minor, alleged his foot was injured when a mirror fell from the wall of the park district's public shower. An unknown third party had placed the mirror, not owned or displayed by the park district, behind a pipe in the shower stall. Plaintiff alleged defendant had notice of the hazardous condition because park district employees knew about and even used the mirrors without securing or removing them. Plaintiff in *Brown* did not plead *defendant* had notice of the hazardous condition, only that its employees had notice. In addition, plaintiff did not allege defendant knew of previous injuries sustained from the mirrors. *Brown*, 220 Ill. App. 3d at 944-45, 581 N.E.2d at 359.

In *Winston v. Board of Education* (1989), 182 Ill. App. 3d 135, 537 N.E.2d 964, the first district affirmed a directed verdict in favor of defendant where plaintiff, a minor student, failed to prove the board of education was liable for his injuries sustained while crossing a street near school, because he did not establish willful and wanton misconduct by the school board. It is of note to our ruling that the trial judge initially permitted the action to proceed to trial because plaintiff alleged other children had been struck by vehicles at the same intersection, suggesting the board knew or should have known of the danger. However, evidence on this point was not produced at trial. *Winston*, 182 Ill. App. 3d at 139, 537 N.E.2d at 967; see also *Majewski v. Chicago Park District* (1988), 177 Ill. App. 3d 337, 341, 532 N.E.2d 409, 411 (plaintiff's count based on willful and wanton misconduct by park district fails where allegations amount only to omissions by defendant, *i.e.*, failure to post signs to warn of possibility of broken glass and to inspect and remove debris from field; conclusory statements insufficient; plaintiff did not plead facts stating *why* defendant knew or should have known about the broken glass).

A second district ruling also evaluated the pleadings in the manner which this ruling requires. In *Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 190-91, 520 N.E.2d 62, 66-67, the court reversed the trial judge's dismissal of plaintiff's claim based on willful and wanton conduct because plaintiff's pleadings properly alleged the dangerous condition of the slide which caused plaintiff's injuries, and also alleged defendants acted in reckless disregard for plaintiff's safety because

they knew about prior accidents and that those accidents resulted from the defective condition of the slide.

Finally, plaintiff's argument that she sufficiently pleaded a willful and wanton misconduct claim against the City is supported by a recent Illinois Supreme Court ruling cited by the City (for a different proposition). In *Burdinie* (139 Ill. 2d at 513, 565 N.E.2d at 661), the court concluded plaintiff failed to state a cause of action based on willful and wanton misconduct by defendant where plaintiff's complaint contained no facts indicating the dangers associated with jumping feet first into the shallow end of a swimming pool nor did plaintiff allege the swimming instructor knew about or disregarded any danger. See also *Corcoran v. Village of Libertyville* (1978), 73 Ill. 2d 316, 329-30, 383 N.E.2d 177, 181-82 (two year old's injury not compensable because although plaintiff alleged work performed on a ditch created its allegedly hazardous condition, no allegations were made that after the work was complete, defendants had notice or knowledge of any hazards).

Plaintiff's complaint in this case explained the danger involved in the support wire was that it was not evident to people walking through the park, it was rusted, and it was not marked to notify people of its presence to prevent them from tripping or falling over it. Plaintiff's complaint against this defendant also alleged the City knew about these dangers because other individuals had informed it and the City knew other people had tripped or fallen over the wire, informing it of the danger before plaintiff sustained her injury. These allegations sufficiently set forth a cause of action against the City based on a willful and wanton misconduct theory. Plaintiff should have been permitted to proceed on this claim.

### 2. Additional Claims

■ Although the question of willful or wanton conduct is generally a question of fact for the jury to decide, if the evidence, when viewed in the light most favorable to the plaintiff, does not tend to show an act done without regard to the safety of others the question should not be submitted to the jury. (*Harvey*, 73 Ill. App. 3d at 82, 390 N.E.2d at 1389.) Plaintiff's claims against Vogt and Brinkman and against the City and the Lutheran Brotherhood based on a *respondeat superior* theory do not sufficiently establish a claim of willful or wanton misconduct by Brinkman. The allegations are based on Vogt's and Brinkman's alleged failure to warn of the existence of the support wires and the claim they should not have used rust-prone baling wire to support the trees. Plaintiff's pleadings failed to include

facts showing intentional conduct to injure, or reckless disregard for the safety of others, by Vogt or Brinkman. The individual claims against them and the claims against the City and the Lutheran Brotherhood based on the theory of *respondeat superior* were properly dismissed.

### III. CONCLUSION

We affirm the trial judge's dismissal of plaintiff's negligence counts against the City, Neilson, Miller, the Lutheran Brotherhood, Vogt, Brinkman, and against the City based on the theory of *respondeat superior* for Vogt's actions and against the Lutheran Brotherhood for Brinkman's actions. We also affirm his dismissal of the willful and wanton misconduct counts against Vogt and Brinkman and against the City based on *respondeat superior* for Vogt's actions and against the Lutheran Brotherhood for Brinkman's actions. We reverse the dismissal of the willful and wanton misconduct count against the City. Plaintiff's pleading of this count was sufficiently specific to allow her to proceed.

Affirmed in part; reversed in part and cause remanded.

LUND and GREEN, JJ., concur.