EARLEST CARTER, Plaintiff-Appellant, v. NEW TRIER EAST HIGH SCHOOL *et al.*, Defendants-Appellees.

First District (2nd Division)    No. 1—94—2339

Opinion filed May 16, 1995.

Harvey L. Walner & Associates, Ltd., of Chicago (Paul M. Weiss, of counsel), for appellant.

Kiesler & Berman, of Chicago (John R. Garofalo, of counsel), for appellees.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

Plaintiff Earlest Carter's complaint alleged that on September 1, 1990, defendants acted negligently and willfully and wantonly with respect to the maintenance of tennis courts on which he was playing when he backed into a hole, injuring his ankle. New Trier East High School was dismissed as a party defendant on August 19, 1992. The board filed an answer denying the allegations forming the gravamen of the complaint and thereafter sought summary judgment, which the trial judge granted.

Plaintiff now appeals, claiming that the judge erred in finding insufficient allegations in the complaint as a matter of law to estab-

lish willful and wanton conduct on the part of the board, and in improperly equating willful and wanton conduct with criminal conduct. No issue is raised on appeal regarding the trial judge's dismissal of plaintiff's negligence count.

■ Initially, we note that this case has been unnecessarily complicated because of the failure of the parties in the trial court to draw a clear distinction between the proper inquiry required to be made regarding a motion to dismiss and the one applicable to a summary judgment motion. (Compare 735 ILCS 5/2—615 (West 1992), with 735 ILCS 5/2—1005 (West 1992).) The distinction between the two was thoroughly and accurately set forth by this court in *Barber-Colman Co. v. A&K Midwest Insulation Co.* (1992), 236 Ill. App. 3d 1065, 603 N.E.2d 1215.

"A motion to dismiss under section 2—615 attacks only the legal sufficiency of the complaint. [Citation.] *** A significant difference between section 2—615 motions, as compared to *** motions for summary judgment is that a section 2—615 motion is based on the pleadings rather than on the underlying facts. Accordingly, affidavits [citation], the products of discovery [citation], documentary evidence not incorporated into the pleadings as exhibits [citation], testimonial evidence [citation], or other evidentiary materials [citation] may not be considered by the court in ruling on a section 2—615 motion. [Citation.] A basic premise of a section 2—615 motion is that it accepts, for purposes of the motion, that all well-pled facts in the complaint are true.

***

If a motion challenging the pleadings may be determined solely from the face of the pleadings, a section 2—615 motion is appropriate. If matters not apparent on the face of the pleadings must be considered to decide the motion, that is, if the defect challenged lies in the underlying facts rather than in the pleadings, a motion for summary judgment under section 2—1005 is the proper tool. [Citation.]

***

Currently, the Code provides that [summary judgment] motions may be made 'with or without supporting affidavits' [citation]; that the party opposing the motion may file opposing affidavits at the time of the hearing or on any earlier occasion [citation]; and that the motion is to be granted 'if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law' [citation]. The fact that the summary judgment motion may be made 'with or without' supporting affidavits does not suggest that the

motion may be used as a substitute for a section 2—615 motion to raise defects appearing on the face of the pleading. [Citation.] The Illinois Supreme Court noted that a section 2—615 motion to dismiss raises 'an inquiry into whether a pleading is sufficient to state a cause of action,' while a summary judgment motion 'almost necessarily assumes that a cause of action has been stated and proceeds to determine whether there are any material issues of fact to be tried.' [Citation.]" *Barber-Colman*, 236 Ill. App. 3d at 1068-70.

Here, in a motion labeled as one for summary judgment, which contained no affidavits or other supporting evidence, the board maintained:

"Assuming, *arguendo*, that every allegation in [the complaint] is true, Plaintiff has failed to plead facts which establish willful and wanton misconduct. The [complaint] contains no allegation of specific facts which shows an intentional act or an act performed with reckless disregard for the safety of others. [Citation.] [Such] misconduct has not been established by [the complaint] because its factual allegations are conclusory in character. Plaintiff's blanket allegation of the Board's failure to repair or warn of a crack in the tennis courts are mere characterizations which are not sufficient to prove willful and wanton conduct."

Basically, the board asserted in its motion that it was entitled to summary judgment because plaintiff's pleadings were "blanket-like," conclusory, and not specific. Such an assertion evinces a complete misapprehension of the distinction between the purpose of a section 2—615 motion and a section 2—1005 motion. See *Barber-Colman*, 236 Ill. App. 3d at 1075.

That confusion abounds in this case is further demonstrated by the trial judge's resolution of the board's motion. Although the judge signed an order granting defendant's "motion for summary judgment," at the hearing on that motion he stated that the board's "willful and wanton" count was "dismiss[ed]," and for support relied on a case dealing with a section 2—615 motion. *Oropeza v. Board of Education* (1992), 238 Ill. App. 3d 399, 606 N.E.2d 482.

■ The supreme court has expressly disapproved of the use of "hybrid" motions that combine a request for summary judgment and one to dismiss for failure to state a cause of action.[1] (*Janes*, 57 Ill. 2d at 405-06.) However, while an order granting such a motion may be

---

[1]The board's motion actually goes beyond being simply predicated on the assumption that there exists a "hybrid" procedure whereby a defendant may challenge the legal sufficiency of a complaint (section 2—615) and, concomitantly, answer it, file affidavits stating facts which would be admissible at

subject to reversal, appellate courts generally treat the motion as it was fundamentally decided below, absent any showing of prejudice to the nonmovant. (*Beauvoir v. Rush-Presbyterian-St. Luke's Medical Center* (1985), 137 Ill. App. 3d 294, 299, 484 N.E.2d 841; *Davis v. Weiskopf* (1982), 108 Ill. App. 3d 505, 508, 439 N.E.2d 60.) In the instant case, though, since it is difficult to discern the trial judge's actual intent, we address the threshold question of whether plaintiff's complaint can survive a section 2—615 motion, that is, whether it states a cause of action. *Janes*, 57 Ill. 2d at 406 (trial court should proceed to entertain the summary judgment aspect of a "hybrid" motion only after a legally sufficient cause of action has been presented).

■ In reviewing the sufficiency of a complaint dismissed pursuant to a section 2—615 motion, the court must determine whether the allegations contained therein, when construed in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief may be granted. (*Duncan v. Rzonca* (1985), 133 Ill. App. 3d 184, 190-91, 478 N.E.2d 603; *Carlson v. Moline Board of Education, School District No. 40* (1984), 124 Ill. App. 3d 967, 464 N.E.2d 1239.) Further, to avoid dismissal under this section, the complaint must sufficiently set forth every essential fact to be proved, and if it fails to allege such facts, the deficiency may not be cured by liberal construction. Conclusions of law or fact unsupported by specific factual allegations are not taken as true. (*Capitol Indemnity Corp. v. Stewart Smith Intermediaries, Inc.* (1992), 229 Ill. App. 3d 119, 123, 593 N.E.2d 872.) In short, in addressing a section 2—615 motion, the role of the trial judge is to determine whether the pleadings present the *possibility* of recovery—*not* an absolute certainty.

■ In the case at bar, to plead a sufficient cause of action in negligence, plaintiff must allege that the board is a local public entity, the existence of a duty owed by the board to plaintiff, a breach of that duty, an injury proximately caused by the breach, and damages. In addition, because the injury is based on the condition of public property used for recreational purposes, plaintiff must allege that the proximate cause of his injury was defendant's willful and wanton

---

trial (although not the case here), and demand judgment on the merits (section 2—1005). (*Janes v. First Federal Savings & Loan Association* (1974), 57 Ill. 2d 398, 405, 213 N.E.2d 605 (disapproving of a section 2—619/2—1005 "hybrid" motion).) On the contrary, the board's motion does not appear to independently assert both types of motions, but argues that it is entitled to summary judgment because it is entitled to have the complaint dismissed for failure to state a cause of action, evincing a complete misunderstanding of the proper purpose of each motion.

conduct. (*Lerma v. Rockford Blacktop Construction Co.* (1993), 247 Ill. App. 3d 567, 571, 617 N.E.2d 531; 745 ILCS 10/3—106 (West 1992).) Further, although a court may determine as a matter of law whether plaintiff's alleged facts constitute wilful and wanton conduct, generally, "[b]ecause of the necessity to closely scrutinize the facts of each case, [a] plaintiff should be allowed to present evidence in support of his allegation of willful and wanton misconduct." *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015.

The question presented by the board's motion is whether plaintiff's complaint sufficiently alleged facts establishing the element of willful and wanton conduct. We conclude that it does.

Plaintiff's complaint stated that the board engaged in willful and wanton conduct by recklessly and consciously:

"a. [D]isregard[ing] the defective condition of an uneven, broken, depressed, and cracked condition on said tennis courts for a long period of time;

b. [F]ail[ing] to repair said defects after complaints of the dangers were made to the Defendants[;]

c. [F]ail[ing] to warn users when they knew that others had been injured due to the condition of the premises[;]

d. [Failing] to inspect [the] premises when it had reason to know such inspection was necessary[; and]

e. [Failing] to respond to complaints of [the] condition."

■ The Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (745 ILCS 10/1—210 (West 1992).) In *Ziarko v. Soo Line R.R. Co.* (1994), 161 Ill. 2d 267, 641 N.E.2d 402, the supreme court offered the following as a definition of willful and wanton acts:

" 'A willful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care.' " *Ziarko*, 161 Ill. 2d at 273, quoting *Schneiderman v. Interstate Transit Lines, Inc.* (1946), 394 Ill. 569, 583, 69 N.E.2d 293.

In *Straub v. City of Mt. Olive* (1993), 240 Ill. App. 3d 967, 607 N.E.2d 672, willful and wanton conduct was found to exist where a local public entity took no action to correct a condition even though

it was informed of the dangerous condition and knew that other persons had previously been injured because of the dangerous condition. There, the plaintiff alleged she was injured in a park during a city-sponsored event when she tripped over a wire used to straighten and support a young tree. The court held "that plaintiff's allegations that (1) the City knew of the danger associated with the support wire and (2) it knew other individuals had tripped or fallen over the wire sufficiently set forth a claim based on willful and wanton misconduct." (*Straub*, 240 Ill. App. 3d at 978.) The court further stated that the plaintiff's allegations were not conclusory because "the City's knowledge of the danger and that individuals previously came in contact with the wire are not mere conclusions." *Straub*, 240 Ill. App. 3d at 978.

In *Scarano v. Town of Ela* (1988), 166 Ill. App. 3d 184, 520 N.E.2d 62, the plaintiff sued to recover injuries he sustained when he fell from a slide located on property owned by the defendant. The court held that the plaintiff's complaint set forth facts sufficient to state a cause of action for willful and wanton misconduct since it alleged that the defendants acted in reckless disregard for the safety of plaintiff when they knew of prior accidents caused by the alleged defective condition of the slide, but took no action to remedy the defect. *Scarano*, 166 Ill. App. 3d at 191.

■ Similar to that in *Scarano* and *Straub*, plaintiff's complaint here alleged that the board not only disregarded the defective condition of the tennis courts, but that it also went so far as to fail to respond to complaints and inspect the premises even though it knew others had been injured as a result of the tennis courts' defective condition.

For support, the board unconvincingly cites *Oropeza*, where the court upheld a section 2—615 dismissal of the plaintiff's complaint. (*Oropeza*, 238 Ill. App. 3d at 403.) There, the plaintiff alleged that the defendant exhibited willful and wanton conduct because it knew or should have known of the existence of trenches on an outdoor basketball court and the injuries they could cause, and because by painting game lines and installing hoops the defendant had encouraged students to play on the court. (*Oropeza*, 238 Ill. App. 3d at 402, citing *Ramos v. Waukegan Community Unit School District No. 60* (1989), 188 Ill. App. 3d 1031, 544 N.E.2d 1302, *Majewski v. Chicago Park District* (1988), 177 Ill. App. 3d 337, 532 N.E.2d 409, and *Lester v. Chicago Park District* (1987), 159 Ill. App. 3d 1054, 513 N.E.2d 72.) Unlike the instant case, the plaintiff in *Oropeza* failed to allege that anyone had complained about the trenches or that the defendant knew others had been injured due to the defective condition of the court.

Additionally, the cases *Oropeza* relied upon, some of which were relied upon by the board as well, are similarly distinguishable. In *Majewski*, the plaintiff failed to plead facts stating *why* defendant " 'knew or should have known' " about broken glass on a football field; whereas, here, plaintiff's complaint stated "why" defendant should have known about the defective condition of the tennis court: because others had complained to defendant regarding the danger presented and injuries sustained as a result thereof. *Majewski*, 177 Ill. App. 3d at 341; see also *Ramos*, 188 Ill. App. 3d at 1038 (citing *Majewski* on the necessity to state "why" a defendant "knew or should have known").

In *Lester*, not only did the plaintiff fail to plead that the defendant received prior complaints regarding the danger of and injuries sustained due to ruts and holes on a park's playing field, but after the defendant was so apprised, it took affirmative remedial action to fill them in. (*Lester*, 159 Ill. App. 3d at 1059.) In the instant case, at this point in the proceedings, no such rehabilitative measures on the part of the board appear in the record.

For the aforementioned reasons, we conclude that plaintiff's complaint pleaded facts sufficient to establish willful and wanton conduct on the part of the board to withstand a section 2—615 motion to dismiss.

■ Next, we address plaintiff's contention that the trial judge erred in referring to the culpability attached to willful and wanton conduct as being similar to the culpability associated with criminal conduct.

As mentioned above, the Tort Immunity Act defines willful and wanton conduct as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." (745 ILCS 10/1—210 (West 1992).) Such conduct has been described as approaching a degree of moral blame associated with intentional conduct usually found in crime. (*Loitz v. Remington Arms Co.* (1990), 138 Ill. 2d 404, 415-16, 563 N.E.2d 397.) However, as explained by the supreme court in *Ziarko*, willful and wanton conduct may be proven also where acts are less than intentional; recklessness will suffice. *Ziarko*, 161 Ill. 2d at 279.

Here, viewed independently, the trial court's comment that willful and wanton conduct is "similar and nearly on the same level of culpability with criminal conduct," while not incorrect, may be said to be overstated, for it suggests a higher level of culpability than *Ziarko* requires. But, the judge also commented that willful and wanton conduct "mean[s] an extremely reckless disregard for other person's

lives [as well as] an utter disregard or an utter indifference or conscious disregard for the safety of others."

We therefore reverse and remand this cause for proceedings consistent with the views expressed herein.

Reversed and remanded.

DiVITO and McCORMICK, JJ., concur.