Fourth Division

May 14, 1998

No. 1-97-3145

GARY STAHL AND CAROL STAHL, JAMES J. )  APPEAL FROM THE

FAUST, HARVEY SILVERBERG and SUSAN )  CIRCUIT COURT OF

SILVERBERG, )  COOK COUNTY.

) 

Plaintiffs-Appellants, )                   

)

v. )

)

THE VILLAGE OF HOFFMAN ESTATES, an )

Illinois Municipal Corporation and )

DOUGLAS ELLSWORTH, Finance Director )

of the Village of Hoffman Estates, )  HONORABLE 

)  DOROTHY KINNAIRD,

Defendants-Appellees. )  JUDGE PRESIDING.

JUSTICE WOLFSON delivered the opinion of the court:

People who transfer title to real estate in the Village of Hoffman Estates are required to pay a transfer tax.  But, since September 21, 1987, a grantor who lives on the property for a year is exempted from paying the tax if he or she buys another residence in the Village within a certain period of time.

The plaintiffs in this case--Gary and Carol Stahl, Harvey and Susan Silverberg, and James Faust--have launched a wide variety of constitutional attacks on the transfer tax and its exemption.  They claim violations of the United States Constitution: the Commerce Clause, the Privileges and Immunities Clause, the Due Process Clause, the Equal Protection Clause, and the right to travel.  They also contend the tax violates the Illinois Constitution's uniformity of taxation and due process clauses.

1-97-3145

The trial court dismissed the plaintiffs' lawsuit against the Village, finding no violations of the Federal or State Constitutions.  We agree with the trial court.  We affirm.

FACTS

On September 21, 1987, the Village of Hoffman Estates adopted ordinance 1884-1987:

"A tax is imposed on the privilege of transferring title to real estate located within the corporate limits of the Village as evidenced by the recordation of a deed by any person and a tax is imposed on the privilege of transferring the beneficial interest in real estate located within the corporate limits of the Village at the rate of One Dollar per One Thousand Dollars of value for each transfer."

Under the ordinance, the grantor of a deed conveying Village property would incur transfer tax liability.  In 1990, the Village raised this tax to $3 for every $1,000 valuation.

The ordinance also provided an exemption for:

"Transactions wherein one of the grantors has continuously resided upon the property for the past one year and has evidence of a contract for sale as a purchaser for a residence within the Village, such contract having closed within three months of the exempt transaction or to close by contract within three months after the exempt transaction."

2 

The Village amended this exemption in 1993 to include contracts closing six months before and after the exempt transaction.

On June 5, 1992, Faust sold his home, moved to Hanover Park, Illinois, and incurred a transfer tax liability of $606.  On December 20, 1993, the Stahls sold their home, moved to Crystal Lake, Illinois, and incurred a transfer tax liability of $423.  On September 25, 1996, the Silverbergs sold their home, moved to Collegeville, Pennsylvania, and incurred a transfer tax liability of $444.  Because they moved out of the Village after transferring their property, none of the appellants received resident exemptions, and all made their transfer tax payments.

On March 20, 1995, Faust filed this lawsuit against the Village of Hoffman Estates to recover his allegedly unconstitutional tax payments.  On April 9, 1995, the Stahls joined Faust's complaint; on November 19, 1995, the Silverbergs joined Faust's complaint.  The appellants' third amended complaint requested legal and equitable relief from the Village's "enforcement and collection of an unconstitutional real estate transfer tax ***."

Specifically, this complaint alleged:

"*** [T]he Defendant Village of Hoffman Estates' real estate transfer tax (i) violates the Commerce Clause, the Privileges and Immunities Clause, and the Equal Protection Clause of the United States Constitution; (ii) violates Plaintiffs' due process rights under the United States Constitution and Article I, Section II of the Constitution of the State of Illinois; and (iii) deprives Plaintiffs of their right to travel under the United States Constitution.  Through these violations of Plaintiffs' civil rights under color of law, Defendants have violated 42 U.S.C. §1983.  Finally, Defendant Village of Hoffman Estates' real estate transfer tax does not uniformly tax the subjects and objects of the tax in violation of Article IX, Section 2 of the Illinois Constitution."

Under the heading "COMMERCE CLAUSE," the complaint also alleged: "The Village of Hoffman Estates Municipal Code, Article 13-5, discriminates against interstate and 
intrastate
 commerce in violation of Article I, § 8 of the United States Constitution."  (Emphasis added.)

On October 16, 1995, the Village of Hoffman Estates adopted ordinance 2768-1995, which said the exemption "shall be and is hereby repealed."  Both sides in this case believe the repeal would not take effect unless the exemption were held invalid on the final order of a court of competent jurisdiction.  We do not necessarily share that view, given the clear and specific words of repeal, but there is no need to decide the question because the answer would not affect the rights of the parties to this appeal.

On April 16, 1997, the Village of Hoffman Estates filed a motion to dismiss under section 2-615 of the Civil Practice Act.  See 735 ILCS 5/2-615(a) (West 1992).  The trial court granted this motion on July 19, 1997.  The court found the appellants' due process, equal protection, right to travel, and tax uniformity claims foreclosed by 
Ball v. Village of Streamwood
, 281 Ill. App. 3d 679, 665 N.E.2d 311 (1996).  The court also found the transfer tax had only an incidental effect on interstate commerce and the tax did not deny the privileges or immunities of Illinois residents to the appellants, who were Illinois residents when they transferred their real estate.  This appeal followed.

DECISION

A motion to dismiss under section 2-615(a) of the Civil Practice Act "tests the legal sufficiency of a pleading and a court must accept all well-pleaded facts as true."  
Doe v. Calumet City
, 161 Ill. 2d 374, 381, 641 N.E.2d 498 (1994).  On appeal, the standard of review for a section 2-615 dismissal is 
de
 
novo
.  
Hough v. Kalousek
, 279 Ill. App. 3d 855, 665 N.E.2d 433 (1996).

The parties do not dispute the facts.  The appellants transferred property within the Village and moved out of the Village.  The appellants received no exemptions and paid their transfer taxes under the ordinance.  The question becomes: do these undisputed facts give rise to the constitutional violations alleged by the appellants?

Home rule municipalities retain the right to levy taxes.  Ill. Const. 1970, art. VII, §6(a).  Home rule municipalities have broad taxation powers and may exercise these powers unless restricted by a constitutional provision or appropriate legislation.  
Mulligan v. Dunne
, 61 Ill. 2d 544, 338 N.E.2d 6 (1975).  Home rule municipalities have authority to enact tax ordinances for taxable events occurring within their territorial limits.  
Forsberg v. City of Chicago
, 151 Ill. App. 3d 354, 361, 502 N.E.2d 283 (1986).  The Village of Hoffman Estates is a home rule unit.

The appellants apparently attack both the transfer tax and its resident exemption.  But the transfer tax itself could not offend any constitutional provisions: State and local governments may impose real property taxes.  A closer examination of the appellants' contentions reveals they dispute only the resident exemption.  The appellants contend the transfer tax violates assorted constitutional provisions because they sold their property, relocated outside the Village, and thus did not receive the resident exemption.

1.  Commerce Clause

The Commerce Clause provides plenary power to Congress "[t]o regulate Commerce among the several States" (U.S. Const., art. I, §8, cl. 3), and by implication imposes a limitation on State and local regulation of interstate commerce (
Oklahoma Tax Commission v. Jefferson Lines, Inc.
, 514 U.S. 175, 179-80, 131 L. Ed. 2d 261, 268, 115 S. Ct. 1331, 1335 (1995)).  See 
Gibbons v. Ogden
, 22 U.S. (9 Wheat.) 1, 6 L. Ed. 2d 23 (1824)(per Marshall, C.J.). In its "negative aspect" (
Fulton Corp. v. Faulkner
, 516 U.S. 325, 330, 133 L. Ed. 2d 796, 804, 116 S. Ct. 848, 853 (1996)), the Commerce Clause prevents State or local governments from engaging in economic isolationism by discriminating against out-of-state business through regulation or taxation.  
C & A Carbone, Inc. v. Clarkstown
, 511 U.S. 383, 390, 128 L. Ed. 2d 399, 407, 114 S. Ct. 1677, 1682 (1994)(citing The Federalist No. 22 (A. Hamilton) at 143-45 (C. Rossiter ed. 1961)).  

Because the Commerce Clause presumes a national market for Congress to regulate, a State or local government violates the so-called dormant Commerce Clause by depriving out-of-state business access to free trade in a local market.  See 
Freeman v. Hewit
, 329 U.S. 249, 252, 91 L. Ed. 265, 272, 67 S. Ct. 274, 276 (1946).

The United States Supreme Court has formulated a two-stage test for analyzing putative commerce clause violations.  

First, the court must determine whether the State or local regulation 
per
 
se
 discriminates against interstate commerce.  See 
Fulton Corp.
, 516 U.S. at 331; 
C & A Carbone
, 511 U.S. at 390.  "Discrimination" simply means differential treatment.  
Oregon Waste Systems, Inc. v. Department of Environmental Quality
, 511 U.S. 93, 99, 128 L. Ed. 2d 13, 21, 114 S. Ct. 1345, 1350 (1994).  "Once a state tax
 is found to discriminate against out-of-state commerce, it is typically struck without further inquiry."  
Chemical Waste Management, Inc. v. Hunt
, 504 U.S. 334, 342, 119 L. Ed. 2d 121, 132, 112 S. Ct. 2009, 2014 (1992); 
National Paint & Coatings, Inc. v. City of Chicago
, 45 F.3d 1124, 1131 (7th Cir. 1995); 
DeHart v. Town of Austin
, 39 F.3d 718, 723 (7th Cir. 1994).  In other words, if the regulation fails the first stage, our inquiry ends: the regulation violates the Constitution.

However, even if the regulation is not 
per
 
se
 discriminatory, it still faces the second stage.  The court must determine whether the State or local regulation imposes a burden on interstate commerce which clearly outweighs its potential benefits.  See 
C & A Carbone
, 511 U.S. at 390.

"If a legitimate local purpose is found, then the question becomes one of degree.  And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved and on whether it could be promoted as well with a lesser impact on interstate activities."
  
Pike v. Bruce Church, Inc.
, 397 U.S. 137, 142, 25 L. Ed. 2d 174, 178, 90 S. Ct. 844, 847 (1970).

The appellants concede the exemption does not substantially burden interstate commerce.  Instead, they rely on their claim that the exemption facially, or 
per
 
se
, discriminates against interstate commerce.  Thus, we do not address the second stage of the commerce clause test.

To support their 
per
 
se
 discrimination argument, the appellants rely on 
Oregon Waste
 and 
Chemical Waste
.  In 
Oregon Waste
 and 
Chemical Waste
, the Court 
invalidated state fees imposed disproportionately on out-of-state solid waste.  Here, the Village's property tax exemption does not disproportionately burden nonresidents.  In fact, the exemption does not distinguish between residents of Hoffman Estates, Illinois and residents of another State.  Instead, it segregates Hoffman Estates residents who sell their homes and choose to repurchase a home in the Village from Hoffman Estates residents who choose to sell their homes and then purchase homes anywhere else.

Oregon Waste
 and 
Chemical Waste
 do not address property taxes, although "[a] tax on real estate *** may impermissibly burden interstate commerce."  
Camps Newfound/Owantonna, Inc. v. Town of Harrison
, ___ U.S. ___, ___, 137 L. Ed. 2d 852, 864, 117 S. Ct. 1590, 1597 (1997).  In 
Camps Newfound
, Maine's property tax exemptions did not apply to charitable organizations primarily serving out-of-state patrons.  A summer camp provided its services to mostly out-of-state campers, and thus did not receive the exemption.  

In invalidating these exemptions, the Court held a State could not impose property taxes, or provide property tax exemptions, in a manner that discriminated against interstate commerce.  
Camps Newfound
, ___ U.S. at ___, 137 L. Ed. 2d at 864, 117 S. Ct. at 1597.  The Court found the exemptions benefited in-state charities catering to in-state patrons and burdened in-state charities catering to out-of-state persons.   ___ U.S. at ___, 137 L. Ed. 2d at 864, 117 S. Ct. at 1598.

However, in 
Camps Newfound
, the Court did not say real estate was an article of interstate commerce.  Instead, the Court 
focused on the interstate commerce "product"--the service provided by the summer camp--regardless of the mechanism for burdening it.  
Camps Newfound
, ___ U.S. at ___, 137 L. Ed. 2d at 865, 117 S. Ct. at 1598.  In our case, the product--real estate itself--cannot travel in interstate commerce.

   "It is now well established *** that a State [or municipality] may tax the owner of property 'having a situs within its limits, whether [the property is] employed in interstate commerce or not ***' [citation], and whether the owner is a resident or not."  
Philco Corp. v. Department of Revenue
, 40 Ill. 2d 312, 322, 239 N.E.2d 805 (1968)(citing 
Helson v. Kentucky
, 279 U.S. 245, 73 L. Ed. 2d 683, 49 S. Ct. 279 (1928); 
Pullman's Palace Car Co. v. Pennsylvania
, 141 U.S. 18, 35 L. Ed. 2d 613, 11 S. Ct. 846 (1891)).

See also 15 C.J.S. 
Commerce
 § 103 ("The commerce clause *** does not preclude the imposition by a state or municipality thereof of property taxes on property of persons or corporations engaged in interstate *** commerce, where such property has a taxable situs within the borders of the taxing state.")

This court has held:

"[A] tax on an event occurring within the taxing body is not a prohibited tax on interstate commerce.  [Citation.]  A tax is valid upon things which are at rest within the taxing body, notwithstanding the fact that they might have been involved in interstate transit before or after that time."  
Forsberg
, 151 Ill. App. 3d at 366.

In enacting the transfer tax, the Village merely exercised its sovereign power to assess taxes against real property within its jurisdiction.  Here, the taxable event--the transfer of real property--occurred entirely within the Village, and the transfer tax itself applies only to residents.  Unlike the in-state businesses in 
Camps Newfound
, the appellants do not complain that some interstate commerce activity increased their tax burden.

The appellants also rely on 
C & A Carbone
.  In 
C & A Carbone
, an in-state solid waste processing company attempted to move waste out of state for processing.  A municipality blocked this transfer under an ordinance which required any solid waste, whether generated in-state or out-of-state, to be processed at a local facility.  The company challenged the ordinance, and the Court invalidated it as 
per
 
se
 discriminatory.  
C & A Carbone
, 511 U.S. at 394.  

The "local processing" cases like 
C & A Carbone
 stand for the proposition that local goverments cannot burden interstate commerce by regulations which geographically funnel in-state and out-of-state demand for goods and services toward an in-state supply.  But our case differs from 
C & A Carbone
 and its predecessors in an important respect.

Unlike the company in 
C & A Carbone
, the appellants here were not engaged in interstate commerce.  Instead, the appellants sold real estate with a taxable situs in the Village and incurred the Village's property tax while they were Village residents.  The appellants simply cannot raise the Commerce Clause as a constitutional ground for relief.  See 
Ball
, 281 Ill. App. 3d at 687 ("In order to have standing to raise a constitutional issue, a plaintiff must bring himself within the class of persons to whom the law is objectionable.")

Additionally, "the class protected by the commerce clause is 
competitors
, not consumers."  (Emphasis in original.)  
Geja's Cafe v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 256, 606 N.E.2d 1212 (1992).  "[T]he rationale of the commerce clause was to create and foster the development of a common market among the states, eradicating internal trade barriers, and prohibiting the economic Balkanization of the Union."  2 R. Rotunda & J. Nowak, Treatise on Constitutional Law §11.1, at 4 (2d ed. 1992).  

In other words, the so-called dormant Commerce Clause seeks to tear down State and local regulations which "discriminate 
against
" nonresidents.  
Terry v. Metropolitan Pier & Exposition Authority
.  (Emphasis added.)  271 Ill. App. 3d 446, 455, 648 N.E.2d 1047 (1995).  The Commerce Clause was not intended to provide benefits to people or businesses who choose to move from state to state.

The ordinance, with its exemption, does not impose a tax on people who leave the Village.  It rewards the people who stay.  In that way the Village promotes stability and continuity.  That is a legitimate local purpose.  People make decisions about where they want to live.  We do not see how the decision to leave Hoffman Estates, foregoing a tax exemption, can be said to offend the Commerce Clause.

The Hoffman Estates' property tax exemption is not 
per
 
se
 discriminatory.  The Hoffman Estates real estate transfer tax, as applied to the appellants, does not violate the Commerce Clause.

2.  Privileges and Immunities Clause

The Privileges and Immunities Clause provides that "the Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."  U.S. Const., art. IV, §2.  The Privileges and Immunities Clause bars:

"*** discrimination against citizens of other States where there is no substantial reason for the discrimination beyond the mere fact that they are citizens of other states."  
Toomer v. Witsell
, 334 U.S. 385, 396, 92 L. Ed. 1460, 1471, 68 S. Ct. 1156, 1162 (1948).  

This constitutional protection extends to the right of nonresidents "to carry on business in another [State] without being subjected in property or person to taxes more onerous" than residents.   
Shaffer v. Carter
, 252 U.S. 37, 56, 64 L. Ed. 445, 458, 40 S. Ct. 221, 227 (1920).  But it does not preclude taxes which burden residents and nonresidents equally.
  
Lunding v. N.Y. Tax Appeals Tribunal
, ___ U.S. ___, ___, 139 L. Ed. 2d 717, 729, 118 S. Ct. 766, 774 (1998).  

Here, the transfer tax operates equally on nonresidents and residents who chose to move out of the Village after selling their property.  Additionally, all of the appellants were Village (and therefore Illinois) residents when they transferred their property and incurred the tax.  The Hoffman Estates transfer tax does not violate the Privileges and Immunities Clause.

3.  Plaintiffs' Other Constitutional Challenges

The appellants have brought a section 1983 claim for an alleged violation of the uniformity and due process clauses of the Illinois constitution.  However, section 1983 provides a vehicle for vindicating Federal constitutional and statutory rights, not State rights, deprived under color of State law.

More importantly, the trial court correctly dismissed the appellants' other constitutional claims pursuant to the recent First District decision in 
Ball
, 281 Ill. App. 3d 679.

In 
Ball
, this court addressed multiple constitutional challenges to an ordinance identical to the transfer tax ordinance here.  The taxpayers challenged the ordinance as violative of the right to travel and the rights to uniformity, equal protection, and due process.
  This court soundly rejected these constitutional arguments, noting Streamwood's transfer tax bore a reasonable relationship to the legitimate interest in local neighborhood preservation, continuity, and stability.  
Ball
, 281 Ill. App. 3d at 684-85.  

The appellants have presented no convincing arguments why our decision on an identical ordinance should differ two years after 
Ball
.  The Hoffman Estates transfer tax does not violate the right to travel and the rights to uniformity, equal protection, and due process.

CONCLUSION

The Hoffman Estates real estate transfer tax and the exemption, as applied to the appellants, comports with Federal and State constitutional provisions.

AFFIRMED.

McNAMARA and SOUTH, JJ., concur.